■ In the Matter of CATHLEEN M. MIDDLETON, Respondent, v DAVID J. MIDDLETON, Appellant. [675 NYS2d 257] —Peters, J. Appeal from an order of the Family Court of Saratoga County (James, J.), entered July 9, 1997, which, *inter alia*, partially granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, to modify a prior order of custody.

At the time of the parties' separation in November 1995, petitioner, a nurse, left the marital residence and moved with the parties' daughter, Katrina (born in 1991), to the home of Billy Jo Whiting, who resided there with her son, Douglas (born in 1989). Respondent, an unemployed inventor and a concededly involved father, quickly commenced visitation. However, upon petitioner's agreed-upon move to Las Vegas with Katrina in January 1996 for a three-month hospital rotation, he was unable to see his daughter and visitation abruptly ceased. During such time, a judgment of divorce was entered which incorporated a formal separation agreement providing for joint custody with physical custody to petitioner and open-ended, nonspecific visitation to respondent.

Upon learning that petitioner intended to stay longer than the original three months, respondent moved to Las Vegas to be closer to his daughter. While there, he resumed a frequent visitation schedule which included nightly contact and learned, for what he contended was the first time, that petitioner and Whiting had joined households to pursue their romantic relationship. Devastated, respondent contended that he expressed his frustrations through somewhat violent letters written to petitioner that were never intended to be sent or placed in her

custody. Based upon his observations of their living arrangements and the interaction between Douglas and Katrina, he became concerned about the sexual overtones he observed in the children's relationship. In September 1996, after all of the parties returned to New York, respondent, believing that Katrina's exposure to her mother's relationship was detrimental, made continuous threats to both petitioner and Katrina that he was going to remove the child from the area.

Petitioner thereafter contended that she began to notice a change in Katrina's behavior when she returned from visits with respondent. Petitioner described her as being anxious, easily upset and beginning to exhibit other disturbing behavior including self-masturbation. She contended that Katrina disclosed that respondent had "touched her in her private parts"—a charge vehemently and continuously denied by respondent. Notwithstanding such disclosure, a report was not made to Child Protective Services until two months later. Testimony further revealed that petitioner permitted visitation to continue during such time and that this was one of two reports made by her against respondent, both ultimately determined to be unfounded. Finally, after a phone call with respondent in October 1996, petitioner had respondent arrested for aggravated harassment, resulting in an adjournment in contemplation of dismissal and an order of protection.

Petitioner thereafter sought sole custody alleging, *inter alia*, long-term sexual and drug abuse by respondent. Respondent sought enforcement of the prior visitation order, contending that petitioner ceased all communication and visitation, and cross-petitioned for sole custody. Family Court issued a temporary order giving petitioner sole custody and respondent supervised visitation.

After a two-day hearing wherein the parties and both Maria Keuthe, the court-appointed psychologist, and Susan Roche, director of the program supervising visits between respondent and his daughter, testified, Family Court, following all recommendations including that of the Law Guardian, continued joint custody with primary physical custody to petitioner. Finding the lifestyles of both parties to be "extremely bizarre", he ordered them to attend the next session of the Child Custody Stress Prevention Project, refrain from unlawful conduct toward each other and to insure that Katrina has a separate sleeping area. The court further ordered counseling for respondent and Katrina, as well as the continuation of supervised visitation until unsupervised visitation is recommended by the counselor. Respondent appeals.

Upon our review, we find Family Court to have appropriately assessed that there was an insufficient change in circumstances to warrant a modification of its prior order (*see, Matter of Blair v Blair*, 243 AD2d 758, *lv denied* 91 NY2d 804; *Matter of Krywanczyk v Krywanczyk*, 236 AD2d 746). Noting that the court's analysis included an evaluation of the testimony, character and sincerity of the parties involved and that such assessment is best made by that court since it had direct access to the parties (*see, Eschbach v Eschbach*, 56 NY2d 167, 173), we find no indication that the determination rendered lacks a sound and substantial basis (*see, Matter of De Losh v De Losh*, 235 AD2d 851, 852, *lv denied* 89 NY2d 813).

As to respondent's challenge to the order requiring supervised visitation, again we find no error. Keuthe's testimony indicated that respondent manifested "extreme identification" with Katrina which could impact on her psychological development both now and in the future. His misplaced identification with her, characterized as an "idealized love object", coupled with his threats to remove her and his tentative emotional state, fully warranted the imposition of precautionary measures (*see, Matter of Guadagno v Guadagno*, 235 AD2d 854). In so finding, Family Court assessed the supportive and positive testimony of Roche and appropriately noted that it was not only respondent who needed therapeutic intervention but also petitioner. Considering the totality of these circumstances as well as the best interest of this child, we cannot say that the determination rendered lacks a sound and substantial basis in the record (*see, Matter of Blair v Blair, supra*).

Mikoll, J. P., Mercure, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.